IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK ALAN MILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Civil Action No. 14-0382 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

AMBROSE, Senior District Judge.

## OPINION
and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos.[9] and [11]). Both parties have filed Briefs in Support of their Motions. (Docket Nos. [10] and [12]). Plaintiff has also filed a Reply Brief. (Docket No. [13]). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting the Defendant's Motion for Summary Judgment and denying the Plaintiff's Motion for Summary Judgment.

**I. BACKGROUND**

Mark Alan Miles ("Miles") appeals under 42 U.S.C. § 405(g) for a review of a final administrative decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381-1383f. Miles claims to suffer from both physical and mental disabilities, including back pain and depression.

Miles filed his application for SSI on January 11, 2011 alleging disability beginning

1

February 1, 1985. (R. 15) Miles would have been 24 years old on the alleged onset date. (R. 55) He was 52 years old at the time the ALJ issued her decision. He graduated from high school and received specialized electronics training in the Navy. (R. 163) His past work included jobs performing electrical work with a construction company, installing alarm systems with an alarm and communications company and installing audio systems with an auto detailer. (R. 164).

Miles's claim was denied initially on March 2, 2011. (R. 15). Miles appeared and testified thereafter at a hearing, as did Charles M. Cohen, Ph. D., an impartial vocational expert. The ALJ then issued a decision denying the request for SSI benefits. Miles then filed an appeal with the Appeals Council. That appeal was denied and he timely filed an appeal with this Court.

The parties have filed Cross-Motions for Summary Judgment and the issues are now ripe for review.

## II. LEGAL ANALYSIS

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**A.  Discussion**

Miles argues that: (1) the ALJ failed to adequately develop the record with relevant medical records she knew to be missing; (2) the ALJ erred in her analysis of his substance

3

abuse; (3) the ALJ's treatment of the opinion of his therapist was improper; (4) the residual functional capacity analysis was erroneous; and (5) the ALJ erred with respect to her credibility findings.

        1)        Alleged Failure to Develop the Record

Miles argues that the ALJ failed to meet her duty to develop the record. *See* ECF Docket No. [10], p. 16. The regulations place the burden upon Miles to demonstrate that he is disabled; which means that he has the duty to provide medical and other evidence showing that he has an impairment(s) and how severe it is. 20 C.F.R. §416.912(a-c). The agency does have the duty to develop the record in a manner sufficient to make a determination of disability. *Ventura v. Shalala*, 55 F.3d 900 (3d Cir. 1995); 20 C.F.R. § 416.912(d).

"Although the Act 'provides an applicant with assistance to prove his claim, the ALJ does not have a duty to search for all the relevant evidence available, because such a requirement would shift the burden of proof.'" *Lynn v. Commissioner of Social Sec.*, Civ. No. 12-1200, 2013 WL 3854460 at * 15 (W.D. Pa. July 24, 2013), *quoting, Schwartz v. Halter*, 134 F. Supp.2d 640, 656 (E.D. Pa. 2100). The duty to develop the record is heightened when a claimant appears pro se. *Early v. Heckler*, 743 F.2d 1002 (3d Cir. 1984); *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). In those cases, an ALJ must "assume a more active role*." Comiskey v. Astrue*, Civ. No. 9-252, 2010 WL 308979 at * 5 (E.D. Pa. Jan. 27, 2010). Such is not the case here. Miles was represented by an attorney. "When an applicant for social security benefits is represented by counsel, the ALJ 'is entitled to assume that he is making his strongest case for benefits.'*" Beers v. Colvin*, Civ. No. 12-2129, 2014 WL 241514 at * 6 (M.D. Pa. Jan. 22, 2014), *quoting, Batts v. Barnhart*, 2002 WL 32345745 (E.D. Pa. March 29, 2002)

Nevertheless Miles alleges that the ALJ knew he had treated with Dr. Edward Heres, a pain specialist and that she knew treatment notes were missing from the record. According to Miles, the ALJ proceeded to make her determination without those notes, despite having

indicated that she would hold the record open. As such, the determination was based upon an incomplete record and therefore not upon substantial evidence.

Miles presents a myopic view of the record. Notably, as stated above, Miles was represented by counsel at the hearing. (R. 33). Further, at the opening of the hearing, such counsel made no objections to the exhibits that were before the ALJ. (R. 34) No mention was made regarding adequacy or completeness. Only at the conclusion of the testimony did counsel ask that the "record remain open" because he "just did find out, just learned today that Claimant had been to see a pain clinician several times [and he] wanted the opportunity to obtain those records." (R. 46) Counsel asked for two weeks and stated that "if for some reason we're not able to get the records at that time, I will advise Your Honor as to what steps my office has taken and then hopefully your office will be kind enough and grant us another extension, if needed." (R. 46) My review of the documents indicates that the ALJ did, in fact, hold the record open for two weeks. Counsel never submitted the treatment notes from Dr. Heres and never contacted the ALJ with a request for a further extension. The ALJ withheld issuing her decision for a full month following the additional two weeks requested by Miles's counsel. Any fault arising from the absence of the records should not be attributed to the ALJ.[1]

Moreover, simply because the ALJ did not have Dr. Heres's records does not mean that the evidence was insufficient to make a disability determination. Even without the records, I find, as set forth below, that there was sufficient evidence of record from which to make a disability determination. Consequently, I find no merit to this argument.

  2)  Miles's History of Alcohol Abuse

Miles next contends that the ALJ failed to properly evaluate whether his history of alcohol abuse was a contributing factor material to the determination of his disability. In

---

[1] I note that Miles's petition to review to the Appeals Council made no reference to the missing documents or to the ALJ's alleged error in reaching a decision without consulting such documents. Further, counsel has not appended those documents to his Brief nor offered any explanation for the failure to obtain.

essence, Miles urges that the ALJ did not assess whether, were he not a substance abuser, he would still be disabled. As such, he reasons, the ALJ's conclusion regarding residual functional capacity ("RFC") is flawed. I disagree.

The Social Security Act precludes the award of either disability benefits or supplemental security income in instances where drug addiction or alcoholism would be "a contributing factor to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(J). *See also*, Social Security regulations at 20 C.F.R. §§ 404.1535 and 416.935. In assessing whether drug addiction or alcoholism (DAA) would be a contributing factor, the key question is whether the applicant would still be considered disabled *if he stopped using drugs and / or alcohol*. *See Davis v. Astrue*, 830 F. Supp.2d 31, 38 (W.D. Pa. 2011). Where, as here, there is evidence of DAA, the ALJ:

> First performs the normal five-step analysis to determine if the claimant is disabled. 20 C.F.R. § 416.935(a). Assuming he concludes that she is disabled (including any impairment attributable to DAA), he then performs a second analysis to determine the effects of drug or alcohol abuse. The ALJ first identifies those physical and mental limitations which would remain if the claimant stopped using drugs or alcohol. He then determines if the remaining limitations (individually or in combination) would be disabling. If the remaining limitations would not be disabling, the conclusion is that DAA is a material factor. Id., § 416.935(b)(2). In short, "[w]hen an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled." *Kangail v. Barnhart*, 454 F.3d 627, 628-29 (7th Cir. 2006).

*Davis*, 830 F.Supp.2d at 38.

Significantly, where a claimant is not disabled when including the effects of drugs and / or alcohol, there is no need to proceed further to determine whether the claimant would still be disabled if he stopped using drugs and / or alcohol. In this case, the ALJ did not find Miles to be disabled in the first instance. As such, there was no need to proceed any further with the analysis.

Miles insists that his substance abuse and depression are "inextricably linked" and, as

6

such, a finding of "not material" would have been appropriate. I disagree. An analysis of materiality was required only if the ALJ had determined that Miles was disabled. The ALJ determined that Miles was not. Consequently, "materiality" was not relevant.[2] Thus, I find no merit to Miles's argument in this regard.

### 3) The ALJ's Evaluation of Patricia Stewart

Miles next argues that the ALJ failed to properly evaluate the opinion of his treating counselor Patricia Stewart ("Stewart"). A counselor is not an "acceptable medical source" pursuant to SSR 06-03p. Rather, counselors and therapists are "other sources." *See* 20 C.F.R. § 404.1513(d) According to SSR 06-03p:

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

The record indicates that the ALJ did consider Ms. Stewart's April 27, 2012 Mental Residual Functional Capacity Questionnaire ("MRFC") as well as her treatment notes. As Miles urges, in the MRFC, Stewart indicated that Miles would not be able to engage in full-time competitive employment on a sustained basis. (R. 482). She opined that Miles would miss more than four days per month and that his prognosis was "poor." (R. 478-482).

After careful consideration, I reject Miles's contention that the ALJ erred in her evaluation of Ms. Stewart's testimony. A review of the record convinces me that, contrary to Miles's

---

[2] For this reason, Miles's citation to *Crawford v. Astrue*, Civ. No. 8-1160, 2009 WL 1033611 (E.D. Pa. April 15, 2009) is not persuasive. In *Crawford*, The ALJ found that, when the claimant's "'depressive / psychotic mental impairments, HIV + impairment, and alcoholism are considered in combination, they arguably result in limitations that would satisfy the requirements for sections B2, B3, B4 and / or C1 and C3 [of Listing 12.09] … resulting in a finding of 'disability' when his substance abuse contributes to those limitations.'" *Crawford*, 2009 WL 1033611 at * 3 (brackets and quotation marks in original). Here, the ALJ did not find that Miles had satisfied any definition of "disability" and therefore did not have to analyze the materiality of any drug or alcohol dependence upon such disability. Further, that portion of the *Astrue* case to which Miles seemingly refers deals with periods of abstinence from the use of drugs and / or alcohol. Id, at * 5. Miles has neither demonstrated that the ALJ's finding regarding "disability' was incorrect, nor has Miles proven that during alleged periods of "abstinence," his mental impairments continued to be disabling.

assertion, the ALJ did not simply reject Ms. Stewart's opinion simply because she was not an "acceptable medical source." Rather, she made an assessment in accordance with the dictates of SSR 06-03P. *See* 2006WL 2329939. That is, the ALJ considered, for instance, whether Ms. Stewart's opinion was consistent with other evidence, the degree to which she supported her opinion with evidence, and how well she explained her opinion. *Id*.

First, the ALJ properly acknowledged Ms. Stewart as an "other source." (R. 21). 21). Yet she accorded her opinion "little weight." (R. 21). She found that Ms. Stewart's other findings do not support her conclusion of disability. For instance, Ms. Stewart did not report that Miles was unable to meet competitive standards in any areas of mental functioning. Nor did she describe Miles as having "no useful ability to function" in any areas of mental functioning. Rather, she stated that Miles was "seriously limited" with respect to only 2,[3] and "limited but satisfactory" or "unlimited or very good," in the other 14 "mental abilities and aptitudes needed to do unskilled work." Though provided room on the form, Stewart did not "explain limitations falling in the three most-limited categories … and include the medical / clinical findings that support this assessment." (R. 480). With respect to the "mental abilities and aptitudes needed to do semiskilled and skilled work," Stewart found that Miles was "seriously limited" in 3 out of the 4 categories.[4] Stewart explained that Miles's diminished memory and concentration was effected by chronic pain. (R. 481). In terms of the "mental abilities and aptitudes needed to do particular types of jobs," Stewart rated Miles "unlimited or very good" in 4 out of 5 categories and "limited but satisfactory" in the remaining category. (R. 481). Additionally, Stewart did not find that Miles had a low IQ or reduced intellectual functioning. (R. 481).

In addition to being internally inconsistent, the ALJ correctly found that Ms. Stewart's

---

[3] Those areas were: maintain attention for two hour segments and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 480). Stewart explained that Miles was "seriously limited" in these functional areas because of chronic pain. (R. 481).

[4] Those categories are: understand and remember detailed instructions; carry out detailed instructions; and set realistic goals or make plans independently of others. (R. 481).

assessments were not supported by the record as a whole. For instance, Ms. Stewart stated that Miles had a "poor response" to psychotropic medicine." Yet the records indicate that Miles himself voluntarily stopped taking his medications. (R. 225) (Citalopram); (R. 196) (Effexor); (R. 419) (Zoloft – admitted that the medication may have "helped a little" but stopped taking it nevertheless); (R. 443) (Remeron - admitted it was working for sleep but stopped taking it); (R. 407) (Doxepin -stopped taking it because of a lack of interest). Further, the ALJ found that Ms. Stewart's conclusions regarding Miles's "depressed mood" were inconsistent with the findings of Dr. Garber in April of 2012. Dr. Garber found Miles to be alert and well-oriented, present with a neutral mood and appropriate affect, and have fair insight and judgment. (R. 407, 419, 428, 436, 441, 443). She noted that he made "good eye contact" and had "fluent speech." (R. 407, 419,428, 436, 441, 443). Thus, because Ms. Stewart's opinion is internally inconsistent, is contradicted by her own treatment notes and is contradicted by other medical evidence, I find no fault in the weight accorded it by the ALJ.

    4)  The Residual Functional Capacity Assessment

 The ALJ found Miles to retain the residual functional capacity to perform light work and to be capable of lifting and carrying 20 pounds occasionally, and 10 pounds frequently, while standing and walking for a combined total of about 6 hours and sitting for up to 6 hours in an 8 hour work day with normal breaks. (R. 18). The ALJ did limit Miles insofar as he could "perform only occasional climbing of ladders, ropes and scaffolds, while also occasionally balancing, stooping, kneeling, crouching and crawling." (R. 18). She also precluded him from any overhead reaching. She noted that "he is able to understand, remember and carry out simple instructions, while also being able to make judgments on simple work-related decisions" and that "he is able to interact appropriately with supervisors and co-workers in a routine work setting, while also being able to respond to usual work situations and to changes in a routine work setting." (R. 18). Miles urges that there is "no medical evidence" in support of these conclusions. *See ECF*

9

*Docket No.* [10], p. 24.

I disagree. As regards Miles's claims of "chronic back pain," for instance, the ALJ noted that in July of 2011, Miles indicated he had no change in his back pain for approximately 20 years. (R. 463). Indeed, Dr. Hawkins' notes read "says lawyer now wants him to get [MRI] applying for social security benefits." (R. 463). The ALJ also cited to objective medical evidence from Drs. Hawkins, Bejjani, and Garber, in support of her conclusion that Miles was capable of light work. (See R. 18-24, referencing Miles's records from Alma Illery Medical Center, treatment records from Dr. Hawkins and Dr. Garber, Ms. Stewart's treatment notes, and records from Dr. Bejjani).

My own review of the record convinces me that substantial evidence supports the ALJ's conclusion that Miles is capable of light work. As stated above, Miles himself noted that his back pain remained unchanged over 20 years. (R. 436) Additionally, although an MRI did indicate that Miles had some stenosis of the back, his spinal cord was free of nerve compression. (R. 341) Further, he remained able to walk without assistance. Indeed, his gait was normal. (R. 344) Medical records indicate that his strength was 5 out of 5 to flexion and extension of his shoulders, elbows, wrists, grip strength, hips, knees and ankles bilaterally. (R. 346)

Physicians recommended only a conservative course of care – physical therapy, steroid injections and medication. Although Dr. Bejjani found some arthritis in his back, it did not "warrant surgery." (R. 331) There is no indication that Miles ever followed up with physical therapy (R. 331 "I recommend he try physical therapy, which he declines at this time") or steroid injections. (R. 330, 312 "[D]r. [B]ejjani recommended getting injections but he says 'not going to happen', says doesn't want anyone sticking needles in back.") As stated above, Miles had a history of non-compliance with prescribed medications.

Dr. Bejjani noted upon examination that "[p]alpation of the lumbar spine reveals no evidence of paravertebral muscular tightness or tenderness." (R. 331). Additionally, Miles did

not reveal any motor deficit during heel walking or toe walking. (R. 331) His reflexes were intact, normal and symmetrical throughout the lower extremities. (R. 331). Similarly, emergency room physicians found Miles to have full range of motion when Miles presented with back pain and no deformities. (R. 336) On another occasion, an emergency room physician noted "[t]here is no evidence of any red flag symptoms concerning for cauda equine syndrome or cord compromise." (R. 344) Simply stated, there is ample evidence to support a finding that Miles retained the residual functional capacity to engage in light work. Consequently, Miles's contention that the AJ made a finding "without any medical support" is unconvincing.

     5)     Credibility Assessment

Finally, Miles argues that the ALJ erred in assessing his credibility. Here the ALJ observed that "there are some conflicts between the claimant's hearing testimony and the medical records regarding issues of the claimant's work history and substance abuse, and these conflicts adversely affect the claimant's overall credibility." (R. 20) It is well-established that the ALJ has the responsibility of determining a claimant's credibility. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determinations are entitled to great deference, unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S. Ct. 1133, 43 L.Ed.2d 403 (1975).

Having reviewed the record, I am satisfied that the ALJ properly discharged her duty to assess Miles's credibility. Her decision contains specific reasons regarding her findings and those reasons are supported by substantial evidence of record. Miles contends that the ALJ

erroneously based her credibility findings upon a conclusion that his attorney somehow prompted him to file this claim, and that he failed to take psychotropic drugs as directed. *See ECF Docket No*. [10], p. 26. While I agree that the ALJ made a passing reference to the influence Miles's attorney may have had,[5] the ALJ devotes much of her credibility analysis to other concerns. Specifically, she details Miles's completely inconsistent accounts regarding his work history. As the ALJ noted, Miles initially testified that he had not worked in three years and that his last job was at an auto customizing job. (R. 19, 34) Yet treatment notes from Alma Illery Medical Center consistently reference Miles as working part-time between February and May of 2012. (R. 396, 398, 400, 402, 405, 408, 414, 416, 420, 422, 424). Indeed, in May of 2012 Miles told Ms. Stewart that he felt "overwhelmed by work projects." (R. 399) During the hearing, Miles admitted that he didn't recall ever indicating that he had a part-time job or making a comment that he felt overwhelmed by work. (R. 35).

The ALJ also noted credibility issues with respect to Miles's statements regarding his use of drugs and alcohol. (R. 19-20) Miles testified during the hearing that he "last drank in September and then November of 2011, taking a drink only once during each month." (R. 19) Similarly, he "testified that although he has used crack cocaine and marijuana in the past, he has not done so in years." (R. 19) Yet, as the ALJ pointed out, the record demonstrates that Miles was still going to a bar two to three times a week in August of 2011. (R. 19) Records from a July 4, 2011 emergency room visit indicate that Miles reported using cocaine and marijuana, and drinking "heavily". (R. 333) Reports of heavy drinking, and a history of cocaine and marijuana use is again recorded on August 2, 2011. (R. 341) Further, during an August 30, 2011 office visit, Miles admitted to having last smoked marijuana the prior week and last used crack the prior year. (R. 452-53)

---

[5] The ALJ states "the record indicates that the claimant seemed disinterested in pursuing hs case for disability until his representative directed him to get an MRI and file his claim." (R. 19)

A reviewing court should "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess the witness's demeanor." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). There is no basis before me upon which to challenge the ALJ's credibility determinations.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK ALAN MILES,<br><br>　　　　Plaintiff,<br><br>　-vs-<br><br>CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Civil Action No. 14-0382 |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

THEREFORE, this 19th day of September, 2014, it is ordered that the decision of the ALJ is affirmed. The Defendant's Motion for Summary Judgment (Docket No.11) is granted and the Plaintiff's Motion for Summary Judgment (Docket No. 9) is denied.

　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　s/ Donetta W. Ambrose
　　　　　　　　　　　　　　　Donetta W. Ambrose
　　　　　　　　　　　　　　　United States Senior District Judge